**Norman HAMPTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48746.**

Court of Criminal Appeals of Texas.

July 2, 1974.

Bill Roberts, Dallas, for appellant.

Henry Wade, Dist. Atty., Ronald D. Hinds, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

QUENTIN KEITH, Commissioner.

Appellant was indicted for robbery with firearms; with leave of the court, the charge was reduced to robbery by assault; the jury found him guilty; and, the trial court set his punishment at confinement for eighteen (18) years.

The sufficiency of the evidence is not challenged and appellant's single ground of error urges that his arrest and the subse-

quent search of the automobile in which he was riding, and the admission into evidence of the physical evidence seized in such search, violated his constitutional rights. We disagree and affirm the judgment of conviction.

On the evening of April 24, 1973, the witness Massingill was in a 7-11 store at the corner of Lovers Lane and Bluffview in Dallas doing some shopping. He noticed two black males come in and begin wandering around the store, their actions arousing his suspicions. Having made his purchase, he went to his car and observed appellant sitting in an automobile parked near the store. Appellant was in a Dodge Charger with a white vinyl top over a blue body; and, as Massingill drove by, appellant got out of the car in which he was seated, thus preventing Massingill from obtaining the license number of the automobile. About that time, one of the men whom Massingill had seen in the store, whom he identified positively as Larry Johnson, came running from the store and entered the car and the parties drove off. The store attendant identified Johnson as one of the men who robbed her at gun point and left with the money from the cash register.

In the afternoon of April 28, 1973, the Irving Police Department received a call from an unnamed citizen reporting suspicious activity on the part of three black males in a white-over-blue Dodge Charger behind some stores in a shopping center "where citizens and the customers normally do not go." Irving Police Officer Elliott and two other units were dispatched to the area. Elliott saw a white-over-blue Dodge Charger leave the main parking area of the shopping center and said that he "turned my vehicle and with the *intention of getting onto that car, or to stop that vehicle.*" (emphasis supplied)

At that time, Officer Elliott had nothing upon which to take action but the dispatcher's report of the so-called "suspicious" activity of the occupants of the car; he had no warrant for their arrest nor had there been any traffic violations committed to his knowledge. He stopped the car within about two blocks, went up to the driver's side of the car, and asked for the drivers' licenses of the occupants. The driver and one passenger, but not appellant, produced valid licenses. Appellant was not driving the car. About that time, Elliott noticed the butt of a pistol sticking out from under the arm rest in the middle of the front seat. He ordered all of the occupants of the car out, telling the driver to get out on his side and the two passengers upon the other side where they were greeted by back-up police officers then on the scene.

One of the other police officers, West, told appellant: "I'm going to search this car, because we think there might be a weapon in there to be used against us. Will I find anything in this car?" Elliott said that appellant replied: "Yes, you're going to find a gun underneath the front seat," and pointed to the passenger side of the front seat. A search of the car revealed a .38 caliber revolver under the arm rest of the front seat and a sawed off shotgun under the front seat on the right side of the car. It was at this time, according to Elliott, that the occupants, including appellant, were placed under arrest.

In the suppression hearing held outside of the presence of the jury, Elliott made no mention of any traffic violation when he was interrogated by the State's attorney. Upon cross-examination, being asked by Johnson's counsel if he had stopped the car because of a traffic violation, Elliott said that he had done so because of the driver's "[f]ailure to maintain a single lane" in the multi-laned street. He did not file any charges for the traffic violation nor was it mentioned in his official report of the incident. As a matter of fact, Elliott said that he did not even mention the traffic violation at the time he arrested the appellant and his companions. At the conclusion of the hearing, the Court overruled the objections to the search.

Both the pistol and the shotgun were offered in evidence over the objections of appellant and his co-defendant Johnson. The store attendant positively identified Johnson as being the robber and Massingill was positive that appellant was the driver of the get-away car seen leaving the store. Neither appellant nor Johnson testified nor did either offer any evidence upon the trial of the case.

Appellant cites and relies upon an impressive list of cases from the Supreme Court of the United States,[1] most of which are well-known to all familiar with this field of the law. We have no occasion to comment thereon, simply stating that the various rules therein enunciated are still recognized and followed by this Court when the circumstances of the particular case invoke the application of a particular rule. Appellant also attempts to distinguish and to differentiate two decisions of this Court.[2]

There is no substantial dispute between the parties as to the law applicable to the case; the real question is factual—Was the warrantless arrest of the appellant based upon the traffic violation mentioned by Officer Elliott? Or was it a mere pretext which he conjured up after having previously determined to stop the car?

Judge Odom, in the authoritative case of Brown v. State, 481 S.W.2d 106, 109 (Tex.Cr.App., 1972), has distilled this rule from many cases:

"In order for a warrantless arrest or search to be justified, the state must show the existence of probable cause at the time the arrest or search was made and the existence of circumstances which made the procuring of a warrant impracticable. * * * Where probable cause is lacking, the challenged search will not be upheld merely because the exigencies of the situation precluded the·obtaining of a warrant." (all citations omitted)

█ The dispatcher's report of the observation of an anonymous citizen to Officer Elliott did not, as a matter of law, constitute probable cause for either the arrest or search of the car in which appellant was riding. See and compare Sanders v. State, 482 S.W.2d 648, 650–651 [Tex.Cr. App., 1972, cert. den. 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972)]. See also, Hull v. State, 510 S.W.2d 358 (Tex.Cr. App., 1974).

On the other hand, the officer had a right to stop the automobile for a traffic violation. Trusley v. State, 505 S.W.2d 861, 862 (Tex.Cr.App., 1974), and cases therein cited. If Officer Elliott was discharging a "legitimate investigative function"[3] when he approached the stopped car for the traffic violation, the search was lawful within the "plain view" rule since he observed the pistol on the seat of the car. Onofre v. State, fn. 2, supra, and cases therein cited. Or, as more recently stated in Casarez v. State, 504 S.W.2d 847, 849 (Tex.Cr.App., 1974):

"This Court has repeatedly held that, when an officer is at a place where he has a legal right to be and encounters evidence in plain view, that evidence is not obtained as the result·of a search.

---

1. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971).

2. Moses v. State, 464 S.W.2d 116 (Tex.Cr. App., 1971); Onofre v. State, 474 S.W.2d 699 (Tex.Cr.App., 1972).

3. Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 89, 907 (1968).

See Holman v. State, 474 S.W.2d 247 (Tex.Cr.App., 1972) and cases there cited."

See also, the dissenting opinion of Judge Douglas in Wilson v. State, 510 S.W.2d 358 (Tex.Cr.App., 1974) wherein most of the controlling decisions relating to the search of a vehicle contemporaneously with an arrest for a traffic violation are discussed.

In his brief, appellant says:

"The Appellant contends there was no traffic violation, that the surrounding circumstances show this to be a sham and subterfuge, a pretext to justify the intrusion that resulted in the observation of the pistol butt."

We concede that Elliott's testimony would have been more persuasive had he mentioned the traffic violation at an earlier point in his testimony or had taken some steps to make it a matter of contemporaneous written record. But there was some evidence from Officer Elliott which supported the State's version that the vehicle was stopped because of a traffic violation, and appellant offered nothing to refute this testimony. Cf. Lane v. State, 424 S.W.2d 925, 928 (Tex.Cr.App., 1967); Wallace v. State, 467 S.W.2d 608, 610 (Tex.Cr.App., 1971). The fact structure of the case at bar differs from that examined in Talbert v. State, 489 S.W.2d 309 (Tex.Cr.App., 1973), wherein the officer admitted that he did not observe any traffic violation but stopped the car because he had already made up his mind to do so, " 'just stop the car to make sure, well, that it was all right.' " (Id. at 310, fn. 2)

■ The initial factual determination of the question presented—Did Elliott stop the car because of a traffic violation? or, Did he do so upon his earlier unsupported suspicion?—was for the trial court. He was present and observed the witness' demeanor and the manner in which he testi-fied. We are unwilling to conclude, upon this record, that the trial court abused its discretion in impliedly finding that Elliott told the truth. See and compare Clemons v. State, 501 S.W.2d 92 (Tex.Cr.App., 1973).

Upon the record before us, we say, as did the Court in Leonard v. State, 496 S. W.2d 576, 578 (Tex.Cr.App., 1973):

"The record supports the trial court's implied findings that the officer was acting in a lawful manner and not upon a pretext in stopping appellants' vehicle."

■ Even if we be wrong in our determination of the constitutional question under discussion, we conclude that the admission of the seized weapons into evidence was harmless error. In Holcomb v. State, 484 S.W.2d 929, 934 (Tex.Cr.App., 1972), Judge Onion reviewed the authorities in detail and concluded that the error was harmless because:

"In the instant case, the evidence of appellant's guilt was not only overwhelming but undisputed. No defense was offered. Both Anderson and Davis identified the appellant as one of the robbers and Anderson testified, without objection, that State's Exhibit #1 'looked like' the gun used by the appellant."

Conceding for the moment that "tainted evidence" (i. e., the weapons seized in the search of the vehicle) is in our record, we have, nevertheless, concluded from our own study of the entire record that the impact of such evidence upon the minds of average jurors would be harmless beyond a reasonable doubt. Bridger v. State, 503 S. W.2d 801, 805 (Tex.Cr.App., 1974).

Not having found reversible error, appellant's single ground of error is overruled and the judgment is affirmed.

Opinion approved by the Court.