Willie D. DILLARD, Appellant,

v.

The STATE of Texas, Appellee.

Harold Eugene NUNLEY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 52587, 52588.

Court of Criminal Appeals of Texas.

March 9, 1977.

Opinion on Appellants' Motion for Rehearing April 20, 1977.

Second Rehearing Denied May 18, 1977.

S. Price Smith, Jr., Wichita Falls, for Willie Dillard.

Bob Balch, Wichita Falls, for Harold Nunley.

James B. Ammons, Asst. Dist. Atty., Timothy Eyssen, Dist. Atty., Wichita Falls, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

These are appeals from convictions for the offense of aggravated robbery. The jury, having found that each appellant had a prior felony conviction, assessed punishment in each case at forty years. Both appellants present substantially the same contentions.

The sufficiency of the evidence to support the convictions is challenged. The indictment alleges that Dillard, Nunley and James Earl Shaw on March 4, 1975, "while in the course of committing theft of property, namely, United States currency, from Jack Hairston, with intent to obtain and maintain control of said property, James Earl Shaw, using and exhibiting a deadly weapon, to wit, a shotgun, knowingly and intentionally placed Jack Hairston in fear of imminent bodily injury and death."

Jack Hairston testifed that on March 4, 1975, he was employed as the night auditor at the Holiday Inn East in Wichita Falls. At approximately 3:40 a. m., a black male entered Hairston's office and exhibited a long barreled gun. Hairston described the man as being approximately six feet tall, clean shaven, slender, with a medium length "Afro" hairstyle and dressed in a blue jacket. He said he responded to the robber's demands for money by giving him the contents of the cash register. This totaled exactly $190.00 in currency. The robber asked him for the location of the safe. Hairston told him that a filing cabinet contained money. The robber threatened to shoot Hairston, took his wallet and made him lie on the floor. The robber then went to the filing cabinet and removed a small grey metal box which contained $75.00 in currency and coins and left. Immediately thereafter Hairston called the police, reported the robbery and gave a description of the robber.

Robert Arnold, Jr., a radio communications dispatcher for the Wichita Falls Police Department, testified that at approximately 3:43 a. m. he received Hairston's call concerning the robbery and immediately dispatched a bulletin to the officers on duty

in that area. He gave a description of the robber and stated a long barreled weapon was used in the robbery.

Officer Alan Bragg testified that he was on patrol when he received Arnold's dispatch. At approximately 3:50 a. m., in the area of the motel, he saw a black over yellow Plymouth traveling at an excessive rate of speed, above the 35 m.p.h. limit. He pursued the vehicle and stopped it. He had intended to issue a traffic citation but decided not to because he was unable to obtain an accurate clocking of the vehicle's speed.

Bragg further testified that he decided to check the driver's identification. As he exited the patrol car the driver of the Plymouth emerged from his automobile. Bragg said he asked the driver to produce his operator's license. At this point the officer observed two other men in the automobile. He approached it and saw a shotgun on the rear floorboard. He stated that Officers Bartosh and Horton had arrived in the meantime. The two men remaining in the Plymouth complied with the other officers' request to get out.

Bragg identified Dillard as the driver of the automobile and Nunley as one of the passengers. The other passenger, Shaw, fit the description of the robber.

The officer stated that a search of the automobile yielded the weapon, ammunition and a large amount of currency which was "stuffed under the front seat." This money totaled exactly $190.00. Bragg said another officer searched Dillard and found approximately $75.00 in his pockets. The money found on Dillard included currency and coins.

Officers Charles Bartosh and Horton assisted Bragg in stopping the vehicle. When Bartosh saw the three men exit the vehicle, he saw a shotgun on the rear floorboard. He saw that Shaw fit the description of the robber and he decided to arrest and handcuff the three men.

Officer Glen Smith testified that after talking to Shaw he went to a highway intersection located about a mile east of the motel and found a metal grey cash box in a ditch.

James Earl Shaw, who was an accomplice witness, testified that Dillard and Nunley came by Linda Burnett's house at 2:00 a. m. on the morning of the robbery. Linda Burnett, Monica Brewster and Sherry Milam were with Shaw at the time. After a brief discussion about robbing the Holiday Inn, Dillard, Nunley and Shaw went to Nunley's house and got his yellow Plymouth automobile. Dillard told Shaw that he had previously been employed by the Holiday Inn East and that the money was contained in a filing cabinet and a safe. Shaw said he was told that he should go in and take the money while Nunley and Dillard remained in the car.

Shaw further testified that the shotgun found in Nunley's Plymouth was the same gun he exhibited during the robbery. He also identified the clip and a shell which were discovered in the automobile.

Shaw testified that he went into the motel office and robbed Hairston. As the trio of robbers left, Dillard placed the money from the cash register under the front seat. Then he put the money from the cash box in his pockets. Shaw said that the box was subsequently thrown out of the car at a Waurika highway intersection near the motel. Shortly thereafter the police stopped the Plymouth as the robbers were traveling toward town and placed them under arrest. He further testified that he told some officers he had robbed the motel's auditor and helped them recover the cash box.

Sherry Milam testified that she shared a house with Linda Burnett and Monica Brewster. She stated that Dillard and Nunley came by the house between 2:00 a. m. and 2:30 a. m. on the morning of the crime, picked up Shaw and left.

Officer Dan Best testified that he and Officer Smith arrived at the scene of the arrest and had a conversation with Shaw concerning the robbery. Then Shaw directed the officers to the 77 Ranch Road and Waurika Highway intersection where the empty cash box was discovered. Best also recovered Hairston's wallet from Shaw. It

contained Hairston's driver's license and several credit cards.

The records of the Holiday Inn reflected that Dillard had previously been employed at the motel. No witnesses testified for the defense.

Article 38.14, V.A.C.C.P., requires corroborating evidence which tends to connect a defendant with the offense in order to support a conviction based upon accomplice testimony. Appellants argue the evidence corroborating the testimony of Shaw is insufficient.

■ The test of sufficiency of the corroborating testimony requires eliminating from consideration the evidence of the accomplice witness and then examination of the testimony of other witnesses to ascertain if there is inculpatory evidence which tends to connect the accused with the commission of the offense. The evidence is sufficient if there is other evidence of an incriminating nature. Otherwise, it is not sufficient. *James v. State*, 538 S.W.2d 414 (Tex.Cr.App.1976); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975), and cases cited therein.

■ The corroboration need not directly link the accused to the crime nor be sufficient in itself to establish guilt. Eliminating from consideration the testimony of the accomplice James Earl Shaw, we are left with (1) the testimony of Sherry Milam that Dillard and Nunley came by her house between 2:00 a. m. and 2:30 a. m. on the morning of the offense and picked up the accomplice; (2) the testimony of Officers Bragg, Smith and Best that appellants were arrested with the accomplice less than fifteen minutes after the robbery at a short distance from the scene; (3) the testimony of Bragg and Smith that a long barreled shotgun fitting the description given by the motel auditor was found in Nunley's vehicle; (4) the testimony of Bragg that exactly $190.00 was found hidden underneath the front seat of the Plymouth, together with Hairston's testimony that exactly $190.00 was taken from the cash register; and (5) Bragg's testimony that approximately

$75.00 was discovered in Dillard's pockets, together with Hairston's testimony that $75.00 was contained in the stolen cash box. We hold the evidence is sufficient to corroborate the accomplice's testimony.

Nunley, without an objection or ground of error, contends that there is a fatal variance between the enhancement paragraph of the indictment and the proof.

■ The indictment alleged robbery. The judgment and sentence were for robbery. He asserts that the time sheet in the prison packet shows that he was serving time for larceny. The judgment and sentence control, not the statement of a board of corrections employee. No variance is shown.

Next, appellants contend that their arrests were made without probable cause and the evidence obtained as the result of the arrests should have been suppressed.

As set out above, the robbery occurred at approximately 3:40 a. m. The police dispatcher received a report from Hairston about the crime at approximately 3:43 a. m. This report was immediately relayed to all officers on duty in the area. They received a description of Shaw and information that a long barreled weapon had been used and that an undetermined amount of money had been taken.

At approximately 3:50 a. m., Bragg observed a black over yellow Plymouth traveling in a westerly direction from the scene of the crime. Since the vehicle was traveling at an excessive rate of speed, for that area, the officer pursued the vehicle. As Bragg pursued the Plymouth, he suspected that it might be related to the robbery which had occurred ten to fifteen minutes earlier.

Bragg, concerning the speeding vehicle, testified as follows:

"Q. At that point in time, why had you turned on your emergency equipment?

"A. It appeared that I wasn't doing a very good job of gaining on him. I was gaining on him but it appeared—at the 35-mile an hour there by the school—

and it still appeared that he was doing more than that.

"Q. You were not closing on him?

"A. I was closing on him, yes, I was."

Bragg also testified as follows:

"Q. All right, Officer Bragg, is it your testimony to this jury that you did not stop this vehicle because of the armed robbery at the Holiday Inn?

"A. It possibly occurred to me as I was in pursuit of the car, why it was at that speed and why it was traveling at that rate of speed, I thought there might have been some connection but my original pursuit of the car was for the traffic violation.

"Q. Well, that was the reason you were there, you were there looking for the armed robber?

"A. That is correct.

"Q. And you were in that vicinity in the black area of Wichita Falls for that purpose?

"A. Correct.

"Q. Is that correct?

"A. I was in the vicinity of the Holiday Inn and the black area is not that far from the Holiday Inn East.

"Q. Your purpose in being there was to look for an automobile, or someone, or something in that area, right?

"A. We had a description of a subject and we knew the offense had just occurred just a few minutes before.

"Q. But it just crossed your mind?

"A. When I saw the car go through there and I began my pursuit and I guess I got suspicious of why it was driving at that rate of speed at that time in the morning.

"Q. Suspicious that these were the people, or one of these people was the person that committed the armed robbery?

"A. That possibly could be involved.

"Q. That was the suspicion that you had?

"A. It crossed my mind it could be involved."

Bragg asked Dillard, the driver of the Plymouth, for his driver's license. After obtaining identification from Dillard, the officer leaned over to request identification from the other occupants and observed a long barreled weapon in the rear floorboard. In the meantime, Officers Horton and Bartosh had arrived and they requested that Nunley and Shaw get out of the vehicle. As these two suspects exited, Bragg observed that Shaw fit the physical description of the robber he had received from the dispatcher and that Shaw was wearing a blue jacket.

■■ The initial stop of Nunley's vehicle was not justified by probable cause to believe that any crime other than speeding had been or was being committed. The traffic violation authorized the initial stop. *Borner v. State*, 521 S.W.2d 852 (Tex.Cr. App.1975); *Hampton v. State*, 511 S.W.2d 1 (Tex.Cr.App.1974). Bragg was thus acting within his authority as a Texas peace officer. Article 6687b, Section 13, V.A.C.S.; *Leonard v. State*, 496 S.W.2d 576 (Tex.Cr. App.1973); *Black v. State*, 491 S.W.2d 428 (Tex.Cr.App.1973). Bragg's observation of the shotgun in plain view on the floorboard, therefore, was not the fruit of a search. *Long v. State*, 532 S.W.2d 591 (Tex.Cr.App. 1976); *Hunnicutt v. State*, 531 S.W.2d 618 (Tex.Cr.App.1976).

■ At this point the officers knew that a robbery had been committed only minutes before at a nearby motel and that a shotgun or rifle was used during the robbery; that Nunley's vehicle had been driven at an excessive rate of speed away from the scene in the early morning hours; and that appellants were in the possession of a shotgun. Thus, the officers had specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted a further detention of appellants. It is well established that a brief detention of suspicious individuals in order to maintain the status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32

L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App. 1974). When the investigation revealed that Shaw fit the description of the robber the officers had sufficient information to justify the three suspects' arrest. The subsequent searches were incident to the lawful arrests.

Appellants argue that since there was a conflict in testimony over whether appellants were speeding the initial stop could not have been justified.

■ Officer Bragg, who was in pursuit of the vehicle, testified that it was speeding. The trial court had sufficient evidence to conclude that there was a violation of the traffic law and did not err in admitting the evidence subsequently found.

■ Appellants contend that the trial court erred in denying their requested charges on mere presence. The rule is that mere presence of the accused in the company of an accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration of the accomplice's testimony. *Moore v. State*, 521 S.W.2d 263 (Tex.Cr.App.1975); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971). However, presence of the accused with an accomplice, when coupled with other circumstances, may be sufficient corroboration. *Cherb v. State*, supra. Thus, if the testimony in the instant case raised the defensive theory of mere presence, appellants were entitled to their requested charges on the issue. *McShane v. State*, 530 S.W.2d 307 (Tex.Cr. App.1975).

The record reflects that the court charged the jury relative to the law governing testimony of an accomplice witness, the pertinent part of the charge reading:

"A conviction cannot be had upon the testimony of an accomplice unless the jury first believes that the accomplice's evidence is true and that it shows the Defendant is guilty of the offense charged against him, and even then you cannot convict unless the accomplice's testimony is corroborated by other evi-dence tending to connect the Defendant with the offense charged and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the Defendant with its commission.

"You are charged that James Earl Shaw was an accomplice if any offense was committed, and you are instructed that you cannot find the Defendant guilty upon the testimony of James Earl Shaw unless you first believe that the testimony of the said James Earl Shaw is true and that it shows the Defendant is guilty as charged in the indictment; and even then you cannot convict the Defendant Harold Eugene Nunley and the Defendant Willie D. Dillard unless you further believe that there is other evidence in this case, outside the evidence of James Earl Shaw, tending to connect the Defendant with the commission of the offense charged in the indictment and then from all the evidence you must believe beyond a reasonable doubt that the Defendant is guilty."

The State's testimony did not raise the issue. Appellants did not testify or raise the defensive theory of mere presence. They were with Shaw, the accomplice, near the scene of the robbery shortly before and after the crime was committed. Further, the fruits of the crime were found hidden in Nunley's automobile and on Dillard's person.

■ Possession by the accused of the fruits of the crime tends to connect them with the commission of the crime and may be sufficient corroboration of accomplice witness testimony. *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968). Finally, the shotgun which was used by the accomplice was found in appellant Nunley's automobile. The trial court did not err in refusing to submit the requested charges.

They complain of the overruling of their motions for new trial after Shaw recanted and testified that they were innocent.

Shaw testified at the hearing on the motions, in part, as follows:

"Q. All right. Now, you had just stated that Willie D. Dillard and Harold Nunley had let you out of their car at the Eastex on Flood Street?

"A. Yes.

"Q. And you had asked them where they would be later, and they had told you at McKinney's Hideaway?

"A. Yes.

"Q. After you got out of the car, what happened?

"A. After I got out of the car, I left from Eastex and got in with Larry Brown, and then me and Larry Brown went to the Holiday Inn. Okay, then we left from the Holiday Inn, went to McKinney's, and they was out there, that's when I got with Willie D. Dillard and Harold Nunley from McKinney's.

"Q. All right. Now stop right there. Is it your statement here under oath that neither Willie D. Dillard nor Harold Nunley participated with you in any way in the robbery of the Holiday Inn East?

"A. They did not.

 \* \* \* \* \* \*

"Q. Did you ever talk with the DA before you had an attorney appointed for you?

"A. Yes.

"Q. On how many occasions, do you recall? How many times did you talk to the DA before you ever talked to your lawyer?

"A. About three times.

"Q. What did he tell you?

"A. He tell me that five years and wanted me to testify against them.

"Q. What did you say?

"A. I told him 'no.'

"Q. Why did you say 'no'?

"A. Because I didn't want to testify.

"Q. Why didn't you want to testify against them?

"A. Because it wasn't true. They wasn't with me.

"Q. Are you saying that they weren't involved?

"A. The (sic) wasn't involved.

"Q. And you didn't want to testify against them?

"A. Yes.

"Q. Well, why did you change your mind? Why did you decide to testify against these two men sitting here?

"A. Like I was scared—like going to the jail and getting 99 years or life, like that.

"Q. Did the DA tell you that you might get 99 years or life?

"A. Yes.

"Q. Is that the reason you testified, and the only reason you testified against these men?

"A. Yes."

The State called Othniel McKinney at the hearing. He testified that his place of business, McKinney's Hideaway, was closed on the date the robbery was committed and no one was there.

Ronnie James testified that on April 18, 1975, he was Shaw's cellmate in the Wichita County jail. James stated that he overheard a conversation between Shaw and appellants, who were confined in an adjacent cell, in which appellants threatened Shaw for testifying against them. James further stated that Shaw promised to "get all three of them cut loose" by talking to the district attorney "about this new story that he made up."

 Whether a new trial should be granted on the retraction of the testimony of a State's witness is within the sound discretion of the trial judge. His action thereon will not be disturbed unless abuse of such discretion is shown. *Wilson v. State*, 445 S.W.2d 213 (Tex.Cr.App.1969); *Williams v. State*, 375 S.W.2d 449 (Tex.Cr. App.1964). See *United States v. Nolte*, 440 F.2d 1124 (5th Cir. 1971), certiorari denied, 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106; *United States v. Smith*, 433 F.2d 149 (5th Cir. 1970). We conclude that the trial court did not abuse its discretion in overruling the motions for new trial.

No error is shown.

The judgments are affirmed.

## OPINION ON APPELLANTS' MOTION FOR REHEARING

DAVIS, Commissioner.

Appellants contend that there was no evidence that a traffic violation had occurred and thus Officer Bragg was not acting within his authority as a peace officer in conducting the search of the automobile. Appellants cite *Faulkner v. State*, Tex.Cr. App., 549 S.W.2d 1 (1976), in support of their contention that if Officer Bragg stopped appellants solely to check Dillard's driver's license, the search of the automobile was illegal. In *Faulkner*, supra, we held:

> "The initial stop of appellant and his passenger was not justified by probable cause to believe that any crime had been or was being committed. The officers saw no evidence of any traffic offenses. The inarticulate hunch, suspicion, or good faith of the officer in suspecting the car to be stolen was insufficient to constitute probable cause for an arrest, or even a temporary detention. . . . The out-of-county tags and slow driving of the appellant were not evidence of any wrongdoing. And the 'caution' of the car's occupants in the presence of the police officers did not rise to the level of probable cause, either. . . . Although the operator's license check was advanced as one reason for the detention, it was explained that this was merely a matter of routine in all such situations. The real reason for the stopping of appellant's automobile would appear to have been its out-of-county tags and the slow, 'cautious' driving of its driver. . . . When the detention permitted by the statute becomes a mere subterfuge or excuse for some other purpose which would not be lawful the actions then become unreasonable and fail to meet the constitutional requirement. . . . The scope of an investigation cannot exceed the purposes which justify its initiation. . . ."

In the instant case, Bragg stated that he pursued appellants' vehicle because it "seemed to be traveling at an exceptionally high rate of speed, for that particular intersection." Bragg stated that the speed limit for that particular intersection was 35 miles per hour. He further testified, "I thought that a traffic violation had been committed. I knew it was in excess of 35, but I didn't know the exact speed."

Even though Bragg further related that he did not intend to issue a citation for a speeding violation because he did not have a "provable offense," see Art. 6701d, Sec. 171(a), V.A.C.S., it is clear that Bragg did think a traffic violation had been committed. We disagree with appellants' contention that unless Bragg knew the exact speed which the automobile was traveling, no violation occurred. Article 6701d, Sec. 166, V.A.C.S., states that a speeding violation occurs whenever a person drives a vehicle on a highway at a speed greater than is reasonable and prudent and it shall be prima facie evidence that the speed is not reasonable if it is in excess of the speed limit specified in that area.

When Bragg noticed the traffic violation, he was acting within the scope of his authority in stopping the automobile and requesting to see Dillard's driver's license. See Art. 6701d, supra; and Art. 6687b, Sec. 13, V.A.C.S. Bragg's investigation was grounded on a traffic violation, contrary to the investigation in *Faulkner*, supra, and thus his investigation did not exceed the purposes which justified its initiation. Cf. *Faulkner*, supra; see *Maldonado v. State*, Tex.Cr.App., 528 S.W.2d 234. The detention of appellants by Bragg to check identification was not a "mere subterfuge or excuse for some other purpose which would not be lawful." Cf. *Faulkner v. State*, supra. Bragg had a right to be where he was when he "plain viewed" the shotgun. See *Duff v. State*, Tex.Cr.App., 546 S.W.2d 283. We hold that the discovery of the gun, combined with the other factors set out in our original opinion, justified the detention of appellants and the subsequent arrest and search.

■ Appellants submit that this Court may only consider that evidence introduced at the motion to suppress evidence to determine if the arrest and search were proper. The record reflects that Officer Bragg testified at the trial on the merits concerning the traffic violation prior to the introduction of the shotgun into evidence before the jury. However, Bragg did not participate in the pre-trial hearing on the motion to suppress. Officer Horton testified at the pre-trial hearing but he did not have personal knowledge of a traffic violation being committed. Without evidence of the commission of the speeding violation, the officers had no right to be where they were and the subsequent arrest and search would have been improper. We held in *Stiggers v. State*, Tex.Cr.App., 506 S.W.2d 609, that the erroneous overruling of a motion to suppress evidence was not reversible error if the fruits of the search were not admitted into evidence at trial. Likewise, in the instant case, because Bragg testified at the trial on the merits as to the traffic violation before the fruits of the search were admitted into evidence, we hold that any error which the trial court may have committed in overruling the motion to suppress was cured. See *Riojas v. State*, Tex.Cr.App., 530 S.W.2d 298.

We have examined the other contentions raised by appellants in their brief in support of their motion for rehearing and find that they are sufficiently addressed in our original opinion.

The motions for rehearing are overruled.

Opinion approved by the Court.