

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00429-CR

MICHAEL NNAMANI                                                   APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY
TRIAL COURT NO. 1342673

----------

## MEMORANDUM OPINION[1]

----------

In one issue, Appellant Michael Nnamani appeals the trial court's denial of his motion to suppress.  We affirm.

### Background

Appellant was charged with driving while intoxicated (DWI) in August 2013. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2016).  Prior to trial, Appellant

---

[1]*See* Tex. R. App. P. 47.4.

moved to suppress all tangible evidence and written or oral statements obtained in connection with his detention and arrest on the grounds that police did not have reasonable suspicion or probable cause to conduct the initial traffic stop.

Officer Nicholas Steppe of the Grand Prairie Police Department testified at the suppression hearing that around midnight on August 27, 2013, he was traveling westbound on Webb Lynn Road in a marked patrol car when he observed three vehicles leave a neighborhood and travel south on Mirabella Road at a "higher rate of speed."[2]  After Officer Steppe turned around to follow the vehicles, he observed all three vehicles turn right from Mirabella onto New York Avenue and then head west.  Two of the three vehicles then turned right to head north on highway 360, while the third vehicle continued west on New York Avenue.  Officer Steppe thought it was strange that the drivers took such a circuitous route, because they could have accessed northbound highway 360 directly by taking Webb Lynn Road instead.

Officer Steppe followed the two vehicles that went north on highway 360. When the cars reached an intersection, he observed the car driven by Appellant slow down as if it was going to make a right turn while "straddling the solid white line of the actual turn lane itself" before making what Officer Steppe described as an "abrupt movement to the left" and continuing north on highway 360.

---

[2]While Officer Steppe testified that he could not determine the actual speed that the cars were traveling, he estimated that the cars were traveling at 40 or 45 miles per hour.  The posted speed limit at that location was 35 miles per hour.

According to Officer Steppe, this was the last in a series of factors forming the basis for his decision to initiate a traffic stop at that point. As Officer Steppe explained:

> After seeing, you know, the driving down Mirabella going north on 360, as I stated, it didn't make a whole lot of sense to me. But what caused my initial reason for stopping him—was—it was twofold. One, it was exceeding the speed limit. But when he made the abrupt lane changes over the lane line, that was what initiated the stop.

Officer Steppe considered that the driver could have had a medical condition, he could have been lost, or he could have been intoxicated. Based on his training, Officer Steppe testified, "People who are intoxicated sometimes they'll exceed the speed limit, straddle lane lines, weave, things of that nature." When asked if there was anything else that led him to suspect the driver was intoxicated, he testified that those were his only reasons.

A video recording taken by the dashboard camera in Officer Steppe's patrol car was admitted into evidence. The video, which does not begin until Officer Steppe was already following Appellant's vehicle heading north on highway 360, depicts Appellant's vehicle slowing down as it approached an intersection and then driving into a right-turn lane with its right blinker on. The vehicle appears to straddle the white line demarking the right-turn lane before adjusting to re-enter the right lane of highway 360 and continuing through the intersection. At that point, Officer Steppe activated the lights on his patrol car and pulled over Appellant.

3

The trial court denied the motion to suppress and adopted the findings of fact and conclusions of law recommended by the magistrate who presided over the hearing. Among its findings, the trial court found that Officer Steppe "made the determination to stop and detain [Appellant] based on his belief that [Appellant] had exceeded the speed limit as it drove south on Mirabella and that [Appellant] straddled the solid white line of the turn lane and abruptly corrected back into the primary lane of travel." The trial court concluded that Officer Steppe "had probable cause or reasonable suspicion to believe that [Appellant] was violating a state traffic law. (Sections 545.351, 545.352, and 545.060 of the Texas Transportation Code)." Appellant pleaded guilty pursuant to a plea-bargain agreement and was assessed a $750 fine and sentenced to 90 days' confinement in the Tarrant County jail, suspended for a period of 12 months' community supervision.

## Discussion

In one issue composed of two subissues, Appellant appeals the denial of his motion to suppress. In his first subissue, Appellant asserts that the trial court erred in finding reasonable suspicion and probable cause "of evidence of speeding based on the conclusory nature of Officer Steppe's testimony and lack of specific articulable facts." In his second subissue, Appellant asserts that the trial court erred in finding reasonable suspicion and probable cause "for a violation of section 545.060 of the Texas Transportation Code."

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial

5

court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## I. The trial court's findings and conclusions

We first address Appellant's general complaint that the trial court's findings of fact and conclusions of law are "vague" and contain "weasel words." Appellant's argument relies upon the court of criminal appeals' decision in *State v. Mendoza*, 365 S.W.3d 666, 671 (Tex. Crim. App. 2012), but that opinion is distinguishable from the case at hand.

In *Mendoza*, the trial court granted the defendant's motion to suppress evidence on the basis that the arresting officer did not have reasonable suspicion but it issued written findings that were ambiguous and contained no determination of the officer's credibility. *Id.* at 667–68. In its opinion, the court of

criminal appeals described the trial court's use of words such as "believed," "noticed," "stated," "felt," and "testified" to describe the officer's testimony in its findings as "weasel words,"[3] which, along with "factual juxtapositions,"[4] cast

---

[3]Specifically, the trial court found that the officer "believed" the defendant was "going at a high rate of speed," "noticed the defendant's vehicle weaving within its lane," "stated that the defendant's car would continuously slow down and brake," "felt that the defendant's car was going to hit another vehicle," and "testified that he stopped the defendant because she weaved within a lane a few times, veered to the right and braked erratically." *Id.* at 668. The trial court concluded, "The Court finds that the facts of this case, (as seen on the video and the testimony of Officer Davila) did not justify a stop of the defendant's vehicle and do not provide the police officer with sufficient reasonable suspicion to believe that the defendant was intoxicated." *Id.*

[4]The court of criminal appeals explained its concern with the factual juxtapositions as follows:

In addition, the trial judge also used a **juxtaposition** of phrases and facts that creates more ambiguity in her findings. For example, in her second factual finding, the trial judge states that "Officer Davila believed the defendant was going at a high rate of speed," but she then contrasts that phrase with the additional fact that he "did not ascertain the vehicle's speed by radar or by pacing the vehicle." In her fourth finding, the trial judge notes, "Officer Davila stated that the defendant's car would continuously slow down and brake." But she immediately contrasts that statement with the further fact that "the video depicts Mesa Street as a roadway going downhill with several curves." And the video shows appellee braking as she approaches each downhill curve and then taking her foot off the brake as she moves into the curve. It is impossible to tell whether the trial judge considered appellee's braking "erratic" or appropriate or whether she concluded that Officer Davila's statement was an objectively reasonable one based on his perception or an objectively unreasonable one based upon her viewing of the video. And, in the fifth finding, the trial judge noted that Officer Davila "felt" that appellee's car was going to hit another car "because it veered to the right." But that statement is immediately followed by a contrasting statement: "There was no testimony indicating if defendant's car weaved out of her lane. There was no testimony about the proximity

7

doubt that the trial court "fully credited [the officer]'s version of events." *Id.* at 671.

The findings of fact and conclusions of law here are not ambiguous and do not present the problem present in *Mendoza*. The trial court's pertinent findings and conclusions are as follows:

*Findings of Fact:*

1. On August 27, 2013, shortly after midnight, Grand Prairie Police Officer M. Steppe was on routine patrol in Grand Prairie, Tarrant County, Texas, when he observed a vehicle being driven by the Defendant which appeared to be following two other vehicles.

2. Officer Steppe is a certified police officer and has been employed as a police officer for the city of Grand Prairie for approximately eight and a half years. He is also an accident reconstruction investigator and expert, a commercial vehicle enforcement officer, standardized field sobriety test instructor, and a drug recognition expert. In addition, Officer Steppe completed the ARIDE class which stands for Advanced Roadside Impairment Detection and Enforcement.

3. Officer Steppe observed the Defendant's vehicle exiting a small neighborhood at a high rate of speed. More specifically, Officer Steppe determined that the Defendant's vehicle was travelling southbound on Mirabella faster than the 35 mile per hour posted speed limit for that area. Officer Steppe estimated that the Defendant was driving between 40 and 45 miles per hour down Mirabella before coming to a stop at a stop sign at Mirabella and New York Avenue. Officer Steppe was not able to confirm the

---

of the other car. The video shows a vehicle about two to three car lengths in front of the defendant's vehicle traveling in the far right lane." Indeed, looking at the video, it appears that appellee's car was two lanes away from and several car lengths behind the other car, but if the trial judge concluded that Officer Davila reasonably felt that appellee's car did pose a danger to the other car, then that fact would support a finding of reasonable suspicion. *Id.* at 672 (emphasis added).

speed of the Defendant's vehicle with radar or pacing; his estimation was based on following the Defendant's vehicle and trying to catch up to it.

. . . .

8. Officer M. Steppe made the determination to stop and detain the defendant based on his belief that the Defendant had exceeded the speed limit as it drove south on Mirabella and that the Defendant straddled the solid white line of the turn lane and abruptly corrected back into the primary lane of travel.

. . . .

*Conclusions of Law:*

. . . .

2. Officer M. Steppe had probable cause or reasonable suspicion to stop and detain the defendant for committing the offense of vehicle failing to drive in a single lane and for exceeding the posted speed limit.

. . . .

12. The Court concludes that the "failure to maintain a single lane" and "speeding" as bases for the stop and detention of the defendant is supported by the evidence. Traffic offenses have long been considered sufficient to justify a stop.

. . . .

14. The Court concludes that the stop and detention of the defendant was without a warrant, but that the officer had probable cause or reasonable suspicion to believe that the defendant was violating a state traffic law. (Sections 545.351, 545.352, and 545.060 of the Texas Transportation Code) Accordingly, the Court concludes that the stop and detention of the defendant by law enforcement was not in violation of the 4th and 14th Amendments of the United States Constitution, Article 1, Section 9 of the Texas Constitution, and Article 38.23 [of the] Texas Code of Criminal Procedure.

9

The trial court's findings and conclusions more closely resemble those in *State v. Elias*, 339 S.W.3d 667, 672 (Tex. Crim. App. 2011), than those in *Mendoza*. In *Elias*, the trial court's findings recounted the officer's observations of a van prior to stopping the van for its failure to signal an intent to turn right at an intersection and concluded that the officer did not have reasonable suspicion or probable cause. *Id.* In determining that the trial court's findings were "explicit" and suggested that the trial court felt the officer was credible, the court of criminal appeals noted that a trial court is to state its "essential findings," meaning "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Id.* at 674.

The findings and conclusions issued by the trial court in this case make it clear that the trial court found Officer Steppe's testimony to be credible, particularly as to Appellant's act of speeding. The trial court's findings detail Officer Steppe's observations that Appellant exited the neighborhood at a "high rate of speed" and that he "determined" that the Defendant was driving faster than the 35-mile-an-hour speed limit for that area. *See, e.g.*, *Mendoza*, 365 S.W.3d at 671 (noting that the use of the word "observed" is a "strong verb" that states an historical fact). These are not "weasel words," especially when combined with the trial court's conclusions that Officer Steppe "had probable cause or reasonable suspicion to stop and detain the defendant . . . for exceeding the posted speed limit," and that "speeding as a bas[i]s for the stop

10

and detention of the defendant [was] supported by the evidence." The findings are consistent with each other—there are no factual juxtapositions as described in the *Mendoza* case—and with the trial court's conclusions and ruling. Thus, we decline to hold that the trial court's findings are ambiguous or vague.[5]

## II. Speeding

Appellant's first subissue argues that Officer Steppe's testimony was conclusory and failed to provide specific, articulable facts to show that he had reasonable suspicion or probable cause to detain Appellant for speeding.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. It is undisputed that this was a warrantless arrest, so the burden of proof shifted from Appellant to the State, which was then required to establish that the search or seizure was reasonable. *Amador*, 221 S.W.3d at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

The parties conflate reasonable suspicion and probable cause in their briefs. A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880

---

[5]Even if we were to find that the findings were too vague or ambiguous the proper remedy would be to remand the case to the trial court for supplemental findings. *Mendoza*, 365 S.W.3d at 673.

(1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. Probable cause is a higher standard and requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed. *Torres*, 182 S.W.3d at 901–02. Like reasonable suspicion, probable cause must be based on specific, articulable facts rather than the officer's mere opinion. *Id.* at 902.

It is well-settled that a police officer may stop and detain a motorist who commits a traffic violation in the officer's presence. *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.). A police officer has probable cause to detain and arrest an offender when the officer sees an offense committed in his presence. *Id.* Because reasonable suspicion is a lesser standard than probable cause, when an officer has probable cause to detain a suspect the officer has also satisfied the reasonable suspicion standard for detention. *Id.* Once a police officer makes a bona fide stop for a traffic offense, he may also investigate any other offense that he reasonably suspects has been committed. *Id.*

12

Appellant challenges only the initial stop, not the continued detention for the investigation of DWI. Specifically, Appellant asserts that Officer Steppe did not articulate specific facts to support his decision to pull over Appellant, relying on *Ford*, 158 S.W.3d at 492. But this case is distinguishable. In *Ford*, the only testimony by the officer describing the circumstances leading up to a stop was that he saw the defendant's vehicle "following too close" behind another vehicle. *Id.* at 491. The court of criminal appeals held that this testimony was too "conclusory" because there were no facts in the record "allowing an appellate court to determine the circumstances upon which [the officer] could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity." *Id.* at 493. In this case, Officer Steppe did provide specific, articulable facts supporting his decision to stop Appellant.

It is a traffic offense for a vehicle operator to "drive at a speed greater than is reasonable and prudent under the circumstances then existing." Tex. Transp. Code Ann. § 545.351(a) (West 2011). A posted speed limit is prima facie evidence that a speed greater than the posted limit is not reasonable and prudent and that speed is unlawful. *Id.* § 545.352 (West Supp. 2016). Appellant particularly takes issue with the fact that Officer Steppe did not use radar to confirm that Appellant was speeding and that Officer Steppe could not pinpoint the exact speed at which Appellant was traveling. One of our sister courts has held that in circumstances such as these, officers are not required to use radar to determine that a driver is speeding. *See Icke v. State*, 36 S.W.3d 913, 915–16

13

(Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). In *Icke*, the court held that reasonable suspicion was shown by the arresting officer's testimony that he formed the opinion that the defendant was speeding based upon his experience and without the use of radar. *Id.* Although the officer confirmed his suspicion through the use of radar, the court noted that the use of radar was not required to show reasonable suspicion. *Id.* at 916 (holding the officer's observation "considered alone or in combination with the radar, rise[s] to the level of reasonable suspicion"); *see also Deramus v. State*, No. 02-10-00045-CR, 2011 WL 582667, at *3 (Tex. App.—Fort Worth Feb. 17, 2011, no pet.) (mem. op., not designated for publication) ("There is no statutory requirement that an officer always use radar to confirm a vehicle's speed, nor is it always possible for an officer to do so.").

Officer Steppe testified that when he first observed Appellant's vehicle, it was driving with two other vehicles at "a higher rate of speed" while exiting a residential neighborhood. Officer Steppe testified that he estimated Appellant's speed to have been 40 or 45 miles per hour in a 35-mile-per-hour zone. Officer Steppe based his determination in part on his experience as a traffic officer and on the fact that he had to "[get] on it pretty good to catch up to them." Officer Steppe's estimation that Appellant's speed was above the speed limit was sufficient to justify a traffic stop. *Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977) (op. on reh'g) (holding that observation of speeding violation provided probable cause to authorize traffic stop and rejecting contention that an officer

14

must know the exact speed at which the defendant was traveling to prove a speeding violation); *Deramus*, 2011 WL 582667, at *3 (holding officer's testimony that he estimated vehicle was going ten miles over the speed limit based on his experience of viewing vehicles in the particular intersection, with no radar to confirm the precise speed, was sufficient to justify traffic stop); *see also Hesskew v. Tex. Dep't of Public Safety*, 144 S.W.3d 189, 191 (Tex. App.—Tyler 2004, no pet.) ("When a law enforcement officer observes a vehicle traveling what he believes to be fifteen miles over the posted speed limit, a traffic stop is justified."). Applying the law to the facts of this case, we hold that reasonable suspicion existed to justify the traffic stop for speeding.

In her dissent, Justice Dauphinot raises an important question, the answer to which does not appear to have been addressed by the court of criminal appeals or any of our sister courts. The dissent points out that "[r]easonable suspicion . . . provides a ground for temporary detention to allow for further investigation" and then questions how Officer Steppe could have continued investigating the moving violation of speeding once it had occurred. Because any such continuing investigation "would yield no evidence of that moving violation" under these circumstances, the dissent reasons that the stop must be justified not by reasonable suspicion, but by probable cause.

As discussed above, a number of courts, including our own, have found that an officer's testimony estimating the driver's speed was sufficient to establish reasonable suspicion and therefore justify the stop. *See, e.g.*, *Deramus*, 2011

15

WL 582667 at *3; *Icke*, 36 S.W.3d at 915–16. But these cases have stopped short of explaining how an officer could continue his investigation of a moving violation by stopping the vehicle. While at first blush it may appear that an officer would have no ability or reason to conduct further investigation between the time he or she observed the violation and prior to issuing a citation, that is not always or necessarily the case. Even in circumstances involving a traffic offense such as speeding, further investigation could be conducted after the vehicle has been stopped. For example, in this case, since the officer did not record the actual speed of Appellant's vehicle on radar, the officer could have questioned Appellant about the speed at which Appellant believed—based upon his own speedometer reading—he was travelling. Appellant's response could yield additional facts that convert reasonable suspicion into probable cause. Furthermore, when questioned about the circumstances surrounding what appeared to be use of excessive speed, Appellant could have related circumstances to Officer Steppe that would factor into a determination of whether the driver's speed was "reasonable and prudent under the circumstances," which is the legal standard. *Compare* Tex. Transp. Code Ann. § 545.351(a), *with id.* § 545.352 (providing that a posted speed limit is only prima facie evidence that a speed greater than the posted limit is not reasonable and prudent); *see also*, *Leming v. State*, No. PD-0072-15, 2016 WL 1458242, at *3 (Tex. Crim. App. 2016) ("for a peace officer to stop a motorist to investigate a traffic infraction, as is the case with any investigative stop, 'proof of the actual commission of the

16

offense is not a requisite.'") (quoting *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977)).

Because we hold that reasonable suspicion existed to justify the traffic stop for speeding, we overrule Appellant's first subissue.

## III. Unsafe lane change

Appellant's second subissue argues that Officer Steppe did not have reasonable suspicion or probable cause to detain Appellant for violating section 545.060 of the transportation code. *See* Tex. Transp. Code Ann. § 545.060 (West 2011) (providing that a driver "shall drive as nearly as practical entirely within a single lane and may not move from the lane unless that movement can be made safely"). Because in overruling Appellant's first subissue we have held that reasonable suspicion existed to stop and detain Appellant for speeding, we do not need to address his second subissue.

## Conclusion

Having overruled the first subissue of Appellant's sole issue on appeal, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE


PANEL: DAUPHINOT, GARDNER, and SUDDERTH, JJ.

DAUPHINOT, J., filed a dissenting opinion.

17

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 17, 2016