Santos **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 59847.

Court of Criminal Appeals of Texas, Panel No. 2.

March 11, 1981.

Rehearing Denied April 15, 1981.

Jerry L. Gardner and Robert G. Turner, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann, and Sam Dick, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

This appeal is taken from appellant's conviction for the offense of possession of more than four ounces of marihuana. A jury found appellant guilty and assessed punishment at four years imprisonment. Appellant's sole ground of error is that the trial court erred in denying his pretrial motion to suppress and, over his timely objection, in permitting the evidence obtained to be introduced during his trial, in contravention of the Fourth Amendment of the United States Constitution and the Texas Constitution, Article I, § 9.

The State has not favored us with a brief to support the search. Instead it filed a motion to strike appellant's brief, alleging that it was not timely filed.[1] Counsel for appellant had obtained an extension of time from this Court to file his brief, but managed to get it timestamped one day late. When this development came to the attention of the Court, it granted a retroactive extension of time to the date the brief was actually filed. This Court has the authority under Article 40.09, § 16, V.A.C.C.P. to grant such extensions, so on a previous day the State's motion to strike was denied. That ruling has been assailed by a motion for leave to file a motion for rehearing, but at this point we find no reason to disturb the earlier ruling.[2]

On the strength of the facts adduced by the State we cannot validate this impermissible search of appellant's van and the concurrent seizure of contraband. The first witness called by the State was Mr. Columbus, a resident of an apartment complex in Houston, who was awakened at approximately 4:30 a. m. on the morning of June 12, 1975 by the noise of argument outside and below him. Observing several persons creating the disturbance, and some of them leaving the scene, he called the police.[3] Then, as he watched, appellant and seven other people went into an apartment below, came out with trash bags, and put them in a van.

Officer Marrow and his partner, Officer Ganze, responded to a disturbance call.[4] Officer Marrow got out of the squad car and walked to the front of the building, looking for apartment 225, while Officer Ganze circled the apartment complex. Officer Marrow, hearing the sound of an engine starting up, went back to a parking lot; he there saw a van, moving out of a parking space, back into another parked vehicle. He testified as follows:

"Q: So, you approached the area where you thought the fight was taking place? What happened then, sir?

A. [Officer Marrow]: . . . I tried to pull up to him, looked to me he was trying to make a wider swing and take off. So, I walked up to him and asked him about this. I don't know if he was involved in a fight or crashing into this other car and as I walked up to the driver's side, there was Mr. Rodriguez. He was driving the vehicle and he had a cut on his nose and blood was coming from his hair, right here. (Indicating) ·

Q: What did you do at that point, officer?

A: At that time, I figured he was in the fight. So, I asked him, and any other occupants, there was four other ones, other ones, four altogether, if they would mind stepping from the vehicle."

It is clear that Officer Marrow did not talk to Mr. Columbus about the reported fight before he detained appellant, and that he had no description of the participants at the time. After Officer Marrow asked appellant and the other occupants to step out of the van, he testified that they were then standing approximately five feet away, and

---

1. While the State makes no complaint about the format of appellant's brief, we were pleased to see the proper subject index and a well prepared list of authorities, but then were appalled in finding that pagination has been omitted throughout the remainder of the brief.

2. These various events all occurred in 1978, the first year the constitutionally modified Court was conducting its business under rules recently promulgated. Without characterizing the collective attitude of members of the Court as then constituted—the writer not being one of them at the time—we do now caution lawyers at the bar that stricter enforcement of Rule 15 is the order of the day.

3. Columbus was not asked and did not volunteer the content of his report to the police department; the trial court had ruled it out.

4. Officer Marrow recalled that "we received a call in regards to a fight [that] was supposed to be taking place" at an apartment which was identified by a number. But Columbus conceded he could not remember the number of his own apartment and was unable to locate the number stated by Officer Marrow—apartment 225.

in front of the van, when Officer Ganze pulled into the parking lot and proceeded to search the van. In fact, Officer Marrow stated that he did not feel it was even necessary to pat down appellant:

"Q: Officer, did you pat down each of these individuals as they came out of the van?

A: No, sir, I did not.

Q: Did any other officers at the scene pat down the individuals as they stepped from the van?

A: Not that I know, no sir.

Q: Then, you were not in fear of your lives from these individuals?

A: Well, you have to be in fear of everybody but you can't be patting down everybody.

Q: But, you didn't have your service revolver drawn or anything like that?

A: No, sir.

Q: In fact, you didn't know any of these individuals were connected up with that disturbance at this time, at this particular time?

A: Other than Mr. Rodriguez having that cut on his head, no, sir.

Q: And that's not conclusive, is it?

A: No, sir, I guess it wouldn't have to be."

It is equally clear that when Officer Ganze arrived to find all of them standing in front of the van, and without so much as one word being exchanged between the two policemen, he went directly to search the van. He stated:

"A: Okay, I pulled up kind of katty-corner to the van and put my spotlight on the van and watched the occupants while my partner was talking to them.

Q: All right, and what happened then, sir?

A: My partner got all four people out of the van at that time. I got out of the patrol car and went over to the—

Q: Did you have an opportunity on the occasion to search the van, sir?

A: Yes, sir, I did.

Q: And as a result of that search, what did you find?

A: . . . I found a bunch of, excuse me, greaffy—excuse me, green, leafy substance, plant-like substance in the rear of the van. I found a numerious [sic] quantity of blue pills."

On cross examination by appellant's attorney:

"Q: You had no conversation with Officer Marrow prior to searching the van; is that correct?

A: No, sir.

Q: Officer Marrow took the four occupants and began some type of interrogation or questioning and that was in front of your vehicle?

A: That was right against the right side of the patrol car.

Q: All right.

A: They were all by the front of the car."

When asked to place the distance between the van and the location of the removed occupants, Officer Ganze put them "ten or fifteen feet" away from it.

Under his ground of error appellant devotes much time and effort to develop an argument that Officer Marrow was not authorized to stop appellant and the van in the first place. That he effected a "seizure" of the van and its occupants is beyond any question, for the answer has recently been given again by the Supreme Court of the United States in *United States v. Cortez*, —— U.S. ——, 101 S.Ct. 690, 66 L.Ed.2d 621,[5] (1981); and see *Armstrong v.*

---

**5.** "The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here. * * An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." The opinion for the Court written by Chief Justice Berger goes on to explain two essential elements of the "particularized suspicion" which must be present before a stop is constitutionally permissible.

*State,* 550 S.W.2d 25, 30–31 (Tex.Cr.App. 1977) in which the Court similarly explicated the concept of what cause is sufficient to authorize police to stop a person much as the Chief Justice of the United States has now done. Suffice to say, the officers who were here looking for an undifferentiated "fight" on the ground near an apartment articulated little particularized suspicion that it might be taking place in a parking lot out back. Once there, Officer Marrow seemed to realize the weakness of his position for, as noted, he did not conduct such a "Terry-type" pat down. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Still, we need not decide here whether Officer Marrow's actions in seizing appellant and the occupants of the van tainted the search of the van that followed. The subsequent conduct of Officer Ganze negates the necessity of such an inquiry. At the moment Officer Ganze, harboring no particularized suspicion whatsoever, and without further ado, left his squad car and proceeded to search the van, he moved beyond the bounds of permissible investigation and violated the constraints of the Fourth Amendment and our own Bill of Rights. This search was impermissible and consequently the marihuana seized was erroneously introduced into evidence. *Branch v. State,* 599 S.W.2d 324, 326–327 (Tex.Cr. App.1980, Opinion on Rehearing); see *Christian v. State,* 592 S.W.2d 625, 627–631 (Tex.Cr.App.1980); see also *Ebarb v. State,* 598 S.W.2d 842, 850 (Tex.Cr.App.1979). We reiterate that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears," *Coolidge v. New Hampshire,* 403 U.S. 443, 461–462, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), nor are citizens shorn of their privacy rights "when they step from the sidewalks into their automobiles," *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).

Appellant's ground of error is sustained, and the judgment is reversed and the cause remanded.