

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00202-CR

_____

BRANDON WILLIAMS, Appellant

V.

THE STATE OF TEXAS

___

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1781183

___

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Brandon Williams appeals three felony convictions for possession of three different controlled substances with the intent to deliver. *See* Tex. Health & Safety Code Ann. §§ 481.112(a), 481.1123(a).[1] Williams challenges his convictions by raising seven issues related to the trial court's admission of evidence offered by the State and the sufficiency of the evidence to support the element of "possession" under the accomplice-witness rule. Because the trial court did not reversibly err by admitting the challenged evidence and the nonaccomplice-witness evidence sufficiently tends to connect Williams to the offenses, we affirm.

## I. Background

At a jury trial, Williams pleaded "not guilty" to three charges of possession with intent to deliver a controlled substance, specifically fentanyl (count one), cocaine (count three), and methamphetamine (count five). The State presented nine witnesses, including an eyewitness, a forensic chemist, a co-defendant, and a variety of law enforcement officers.

Ruth Lara Kissler testified that she was living at the Relax Inn in Fort Worth, Texas, in 2022 and 2023. Kissler, a recovering drug addict, stated that "drug dealing [was] going on" on the floor below hers. She claimed that she had called the police

---

[1]Each conviction was a first-degree felony offense, as the aggregate weight of each controlled substance was four grams or more, but less than 200 grams. *Id.* §§ 481.112(d), 481.1123(d).

"[c]lose to 50" times while she was living there, but nothing was done to address the issue. Kissler identified Williams as the person she had seen selling drugs at the hotel and testified that he had tried to sell her oxycodone after she moved in. When Kissler informed Williams that she was clean, he offered to give her the first one free. Kissler testified that she eventually brought the issue to the attention of a Tarrant County Sheriff's Office deputy. Search warrants were obtained and executed shortly after she made this report, resulting in Williams's arrest. Kissler testified that the drug activity at the hotel was "silent" after his arrest.[2]

Sergeant Sean Soria—with the Tarrant County Sheriff's Office—also testified. Sergeant Soria stated that he was working with the narcotics enforcement team as a plainclothes officer when he received a tip about possible drug deals occurring at the Relax Inn. To verify the tip, Sergeant Soria conducted follow-up surveillance and observed Williams[3] complete a "hand-to-hand interaction" with an unidentified individual at the Relax Inn. Sergeant Soria explained that a hand-to-hand transaction is, in his experience, consistent with narcotics distribution.

Sergeant Soria called another investigator to assist, and a traffic stop was initiated on the person whom Sergeant Soria saw make the exchange with Williams. During the

---

[2]Kissler moved out two months after Williams's arrest but testified that things were "silent for the duration" of her two remaining months at the hotel.

[3]Sergeant Soria did not testify as to how Williams was first identified but did testify that he was familiar with Williams.

3

traffic stop, officers arrested the person for fentanyl possession, and the person then identified "an individual matching [Williams's] description" as having sold him the fentanyl pills.

During the investigation, Sergeant Soria spoke with another "source of information"[4] who identified Williams "as a narcotics distributor" at the Relax Inn. Sergeant Soria also received information that the narcotics that he was investigating had been moved from a different room to room 142. Based on his investigation, Sergeant Soria obtained narcotic search warrants for three rooms at the Relax Inn: 142, 145, and 150. Sergeant Soria—having information that Williams had a GPS ankle monitor[5]—coordinated the execution of the search warrants to coincide with Williams's presence at the Relax Inn. Williams's GPS monitor showed him at the Relax Inn every day between May 16 and 23, and the search warrants for the three rooms were executed on

---

[4]This witness was never identified in the record.

[5]Josette Phillips, an officer with pretrial probation, testified that she supervised everyone placed on GPS ankle monitors—including Williams. Officer Phillips also testified that the location of the Relax Inn was not Williams's recorded home location nor his work location, as he was reportedly unemployed. During Officer Phillips's testimony, the trial court admitted Williams's GPS monitor logs showing where he was between May 16, 2023, and May 23, 2023. The trial court also admitted maps of Williams's GPS locations from each of those days.

May 23, 2023. Sergeant Soria testified that Williams was arrested "around room 142" and was staying in room 150.[6] Jessica Campbell[7] and Mitchell Green[8] were also arrested.

The search of room 142 revealed a collection of various narcotics, including methamphetamine, cocaine, and fentanyl, along with a small digital scale covered in white powder. No narcotics were discovered in room 145 or room 150. Sergeant Soria testified in front of the jury that Williams could have possession and control of the seized narcotics, even if he was not inside room 142 at the time of the seizure.

When executing the search warrants, officers also searched Williams and his vehicle and recovered two hotel key cards, both coded to open room 142.[9] Officers recovered multiple stacks of cash from the glove compartment and center console of

---

[6]Investigator Christopher Holland assisted with photographing room 150 and Williams's vehicle that was parked outside room 150. In room 150, he photographed two receipts that had Williams's name listed as the customer.

[7]Campbell was arrested inside room 142 and testified as a co-defendant against Williams. The jury charge included an accomplice-witness instruction that was not contested by either party.

[8]Green was arrested "around room 150" and did not testify.

[9]Investigator Holland tested the key cards and stated that even though the door was already open, he heard the internal parts move (a "click" when the keys were held to the key reader). He also testified that he was able to manipulate the door handle after holding the cards to the key reader but was not able to do so beforehand.

Williams's vehicle, along with paperwork related to his community supervision and GPS monitor.[10]

After Sergeant Soria's testimony, Campbell testified that she and Williams had been good friends since 2007 and that he had been her cocaine supplier for more than a year. Campbell stated that Williams paid for her to stay in room 142 at the Relax Inn and that she helped him sell drugs. She admitted to helping bag up and sell cocaine, methamphetamine, and fentanyl pills. Campbell also testified that Williams had multiple rooms at the Relax Inn, but none were registered in his name to prevent law enforcement from knowing about them. According to Campbell, the drugs—and the scale to weigh the drugs—found in room 142 all belonged to Williams.

At the close of evidence,[11] the jury found Williams guilty of all three counts and assessed his punishment at confinement in the Texas Department of Criminal Justice for a term of 99 years for each count, along with a fine of $20,000 for count one. The trial court sentenced Williams accordingly, ordering the sentences to run concurrently. This appeal followed.

Williams raises seven issues on appeal; we begin with his accomplice-witness challenge.

---

[10]The trial court admitted photographs of this paperwork as State's exhibits 71 and 72.

[11]The defense did not present any witnesses during the guilt–innocence phase of trial.

## II. Accomplice Witness Challenge

In his seventh issue, Williams complains that the evidence is insufficient to support his convictions because the accomplice-witness testimony on the element of possession was uncorroborated. Williams's argument misapplies the standard of review for the accomplice-witness rule, and we disagree that the evidence was insufficient to support the element of possession—with or without Campbell's testimony.

### A. Standard of Review and Applicable Law

Article 38.14 of the Code of Criminal Procedure sets out the accomplice-witness rule: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[,] and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14.

When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). "To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.* Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016) (citing *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App.

7

1999)). Rather, the direct or circumstantial corroborating evidence must show that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *see Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) ("There need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime.").

We judge the sufficiency of nonaccomplice-witness evidence according to the particular facts and circumstances of each case. *Malone*, 253 S.W.3d at 257. Circumstances that are apparently insignificant may constitute sufficient evidence of corroboration. *Simmons v. State*, 205 S.W.3d 65, 73 (Tex. App.—Fort Worth 2006, no pet.). We do not construe the nonaccomplice-witness evidence de novo but instead defer to the factfinder's resolutions. *Smith*, 332 S.W.3d at 442.

Proof that the defendant was at or near the scene of the crime at or about the time of its commission when coupled with other suspicious circumstances may tend to connect him to the crime so as to furnish sufficient corroboration to support a conviction. *Id.* at 443–44. But a defendant's mere presence at the scene of a crime is insufficient to corroborate accomplice-witness testimony. *Malone*, 253 S.W.3d at 257. Possession of the fruits of a crime may also be sufficient corroboration. *Dillard v. State*, 550 S.W.2d 45, 51 (Tex. Crim. App. 1977); *Powell v. State*, 219 S.W.3d 498, 505 (Tex. App.—Fort Worth 2007, pet. ref'd); *see Keith v. State*, 384 S.W.3d 452, 457–58 (Tex. App.—Eastland 2012, pet. ref'd).

B. Analysis

Here, Williams attempts to use the accomplice-witness rule to exclude Campbell's testimony and to challenge the sufficiency of the evidence only as to the element of possession. We note that in his brief, Williams acknowledges that the evidence (excluding Campbell's testimony[12]) "may tend to connect [him] generally with possessing and selling drugs at the hotel" but argues that "it fails to connect him with the drugs made an essential element of the indictment."

The accomplice-witness rule is concerned with the tendency of the nonaccomplice-witness evidence to connect the accused to the offense as a whole, rather than to each individual element of the crime. *See Joubert*, 235 S.W.3d at 731. Thus, we agree with Williams that the evidence—without Campbell's testimony—is sufficient to demonstrate that he dealt drugs from the Relax Inn at the time of the offenses, but we disagree that this evidence is insufficient to corroborate his possession of the drugs made the basis of his convictions under the accomplice-witness rule because it tends to connect him to the offenses charged. *See Malone*, 253 S.W.3d at 257; *see also Smith*, 332 S.W.3d at 442.

The evidence shows that Williams was present at the Relax Inn when the search warrants were executed and that he was arrested near room 142, the room where the narcotics were recovered. In fact, the GPS log from Williams's ankle monitor showed

_____

[12]The parties do not dispute that Campbell is an accomplice witness under the rule.

9

that he was frequently at the Relax Inn in the days immediately before his arrest, despite testimony that the hotel was neither his residence nor his place of employment. Williams also had two key cards to room 142—despite his purported lack of connections to the room—one on his person and one in his vehicle.[13] The search of Williams's vehicle also resulted in multiple stacks of cash, which, according to Sergeant Soria's testimony, were consistent with someone who was the "head" of a drug organization. *See Dillard*, 550 S.W.2d at 51; *Powell*, 219 S.W.3d at 505; *see also Keith*, 384 S.W.3d at 457–58.

Additionally, the State introduced testimony from Kissler that Williams had attempted to sell her drugs at the hotel and testimony from Sergeant Soria that during his surveillance of the Relax Inn he witnessed a "hand-to-hand interaction" consistent with narcotics distribution between Williams and "an unknown individual." A traffic stop was then initiated on the unknown individual and resulted in an arrest for possession of fentanyl. The individual identified a person matching Williams's description as the one who provided him with the fentanyl pills.

Thus, a rational juror could have found that the nonaccomplice-witness evidence sufficiently tended to connect Williams to the commission of the offenses. *See* Tex. Code Crim. Proc. Ann. art. 38.14; *Smith*, 332 S.W.3d at 442; *Joubert*, 235 S.W.3d at 731.

---

[13]Williams's counsel thoroughly cross-examined Sergeant Soria regarding the testimony that the key cards found on Williams's person and in the vehicle were programmed to open room 142.

10

We overrule Williams's seventh issue.[14]

## III. Evidentiary Challenges

Williams's first five issues challenge several evidentiary rulings by the trial court. Issues one and two challenge the admission of evidence related to Williams's pretrial supervision and his use of a GPS ankle monitor as part of this supervision. Williams claims the admission of the evidence that he was on pretrial supervision violated Rule 403 (issue one) and Rule 404(b)(1) (issue two). Issue three challenges the admission of

---

[14]Even if we presume Williams's seventh issue is really a general sufficiency challenge on the element of possession, our conclusion remains the same. In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility, and we presume the factfinder resolved any conflicting inferences in favor of the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021); *see also Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Possession is "actual care, custody, control, or management." Tex. Health & Safety Code Ann. § 481.002(38). Possession can be established by direct or circumstantial evidence, and the evidence must establish that the accused's connection to the drugs was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

Considering the nonaccomplice-witness testimony above, as well as Campbell's testimony that the narcotics in room 142 belonged to Williams and that he paid for the room in exchange for her assistance in selling them, we find that it is not outside the zone of reasonable disagreement for the jury to have found the crime's essential elements beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Braughton*, 569 S.W.3d at 608. Even considering the affirmative links between Williams and the narcotics, we find the evidence supports at least six of the fourteen identified affirmative links: numbers 1, 2, 3, 11, 12, and 13. *See Evans*, 202 S.W.3d at 161–62 nn.9, 12 (approving a non-exclusive list of fourteen possible factors that may circumstantially establish the legal sufficiency as to a knowing "possession"). Therefore, if this issue is a sufficiency challenge, it is likewise overruled.

State's exhibits 71 and 72 under Rule 403. Issue four challenges the admission of Sergeant Soria's testimony that Williams could have possessed the drugs even though he was not in the room when the drugs were seized. Issue five raises a hearsay challenge to testimony from Sergeant Soria that one or more non-testifying witnesses had identified Williams as a narcotics dealer and informed police that the drugs had been moved to room 142 before the search warrant was executed.

We first address issue two, followed by issues one and three together, then issue four, and finally issue five.

A. Standard of Review

We review the trial court's decision to admit evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Because the trial court "has the best view of the evidence," an appellate court will not disturb a trial court's ruling if it falls within the zone in which reasonable minds may differ. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021); *Jumper v. State*, No. 02-22-00286-CR, 2024 WL 3059060, at *2 (Tex. App.—Fort Worth June 20, 2024, pet. ref'd) (mem. op., not designated for publication). However, if the trial court's decision falls outside the "zone of reasonable disagreement," it has abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

If the trial court abused its discretion in admitting the complained-of evidence, that error is reviewed as nonconstitutional error. *Patterson v. State*, 508 S.W.3d 432, 440 (Tex. App.—Fort Worth 2015, no pet.) ("The erroneous admission of evidence is

12

nonconstitutional error." (citing *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010))). Nonconstitutional error will be reversed "only if it affects an appellant's substantial rights." *Id.*; *see* Tex. R. App. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

An appellant's substantial rights are affected only if "the error had a substantial or injurious effect or influence on the jury's verdict." *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011). "[W]e look to the entire record to determine whether the erroneously admitted evidence had anything more than a slight effect on the jury's verdict." *Traylor v. State*, 660 S.W.3d 214, 222 (Tex. App.—San Antonio 2022, no pet.). To determine the effect on the verdict, we consider (1) the character of the alleged error and its connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and weight of additional evidence supporting the verdict, and (4) whether the State emphasized the error. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021) (citing *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)). "[A]n appellate court must disregard the error if the court, 'after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)).

B. Rule 404(b)(1)

In his second issue, Williams complains of the trial court's admission of testimony that he was on bond or pretrial supervision over his Rule 404(b) objection.

Williams complains that the State failed to offer evidence of any similarities under Rule 404(b)(2) between the offenses charged and that for which he was on bond. The State claimed at trial that it could present the evidence from Williams's GPS monitor logs only through testimony from Officer Phillips, Williams's pretrial supervision officer, and contended it was "not for character evidence." In other words, the evidence that he was on bond was incidental to establish a different fact of consequence.

1. Applicable Law

Character evidence is generally inadmissible because it may "weigh too much with the jury" and encourage it "to prejudge one with a bad general record and deny [a defendant] the fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 476, 69 S. Ct. 213, 218 (1948). It is inadmissible "to prove that on a particular occasion the person acted in accordance with the character or trait." Tex. R. Evid. 404(a). Specifically, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). This rule prohibits admission of evidence to prove a person's character "from which the trier of fact is then to infer that the person acted in conformity with that character trait on the occasion in question." *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). However, under Rule 404(b)(2), this evidence may be admissible for another purpose, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

14

"[T]he propensity to commit crimes is not a material fact in a criminal case[.]" *Segundo v. State*, 270 S.W.3d 79, 87–88 (Tex. Crim. App. 2008). But extraneous misconduct evidence may "be admissible if [it] is logically relevant to prove some . . . fact" other than character propensity. *Johnston*, 145 S.W.3d at 219. Evidence of extraneous misconduct must tend to enhance or diminish the probable existence of a fact of consequence in the case. *Id.* at 219 n.9. Even "a small nudge toward proving a fact of consequence" satisfies relevancy. *Gonzalez*, 544 S.W.3d at 370.

A fact of consequence may be "either an elemental fact or an evidentiary fact from which an elemental fact may be inferred." *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016). Extraneous misconduct evidence may be admissible to rebut a defensive theory that negates an element of the charged offense. *Johnston*, 145 S.W.3d at 219; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

2. Analysis

During Officer Phillips's testimony, defense counsel did not make a Rule 404(b) objection until after Officer Phillips stated that her role was to "supervise defendants [who] are on pre-trial probation" and on a GPS ankle monitor. Officer Phillips then confirmed that she supervised Williams, and she identified him in open court.[15]

---

[15]Officer Phillips specifically testified that she was assigned to supervise Williams's GPS ankle monitor while he was on pretrial probation *before* there was any objection to her testimony under Rule 404(b).

As a result, defense counsel's belated objection to Officer Phillips's testimony failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1)(A); *see also Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987) (holding to preserve error on appeal by way of objection alone, "the objection must come *before* the . . . question manifestly calling for objectionable testimony is answered in front of the factfinder" (emphasis in original)). A timely objection "must be lodged at the earliest opportunity, or as soon as the ground of objection becomes apparent." *Polk*, 729 S.W.2d at 753 (internal quotation marks omitted). Here, it cannot be assumed or inferred that Williams was unaware of the nature of Officer Phillips's testimony, considering the Rule 403 objection defense counsel raised on this same issue before trial.[16] Thus, the objection was untimely, and Williams's Rule 404(b) objection was not preserved for appellate review.

However, even if this issue had been preserved, the objected-to testimony was admissible under Rule 404(b)(2) for a purpose other than Williams's propensity to engage in criminal activity. *See* Tex. R. Evid. 404(b)(2). Instead, the evidence that he was on bond was introduced incidentally, and only to establish that Officer Phillips was familiar with Williams and was responsible for his GPS monitor records. Williams spent a great deal of time at the Relax Inn, even though he neither lived nor worked there, and thus he had—at the very least—the opportunity to engage in the alleged crimes in

---

[16]The nature of the running objection made before trial began was restricted to Rule 403—"more prejudicial than probative."

16

this case. The testimony that he was on bond was not offered to show that he engaged in prior extraneous offenses. *See id.* His frequent presence at the location was a fact of consequence for the alleged possession with intent to deliver charges, and the evidence of any prior extraneous offenses was a predicate matter to establish Officer Phillips's knowledge. *See Johnston*, 145 S.W.3d at 219 n.9.

Additionally, one of the defensive theories raised by Williams at trial was that the State failed to bring sufficient evidence that he possessed the seized drugs and related paraphernalia. Thus the only means of introducing the information gathered from Williams's GPS monitor showing his frequent visits to the Relax Inn was through Officer Phillips's testimony and it was admissible to rebut his defensive theory that the contraband was not his. *See id.* (permitting extraneous offense evidence to rebut a defensive theory that negates an element of the charged offense).

Alternatively, even if the evidence was not admissible under Rule 404(b), there is nothing to support that the evidence that Williams was on bond had any injurious effect on the verdict. *See Bagheri*, 119 S.W.3d at 763. The evidence that Williams was on bond during the events of this case was mentioned only four times in front of the jury: (1) during Officer Phillips's testimony about her supervision of Williams's GPS monitor while he was on bond; (2) during Sergeant Soria's testimony about his knowledge of Williams's GPS monitor as a condition of his bond; (3) during Investigator Holland's testimony about the Tarrant County Community Supervision and Corrections Department (CSCD) paperwork in State's exhibits 71 and 72; and (4) during the State's

17

closing argument that the Relax Inn location seen frequently on the GPS logs was not Williams's home address according to his bond. These instances did not spend an inordinate amount of time on Williams's status as a probationer, nor was it emphasized to the jury. *Macedo*, 629 S.W.3d at 240.

Further, the evidence was only incidentally introduced to present Williams's GPS monitor logs. *See id.*; *Gonzalez*, 544 S.W.3d at 370; *Johnston*, 145 S.W.3d at 219. There was much more persuasive evidence to support the verdict than the evidence that he was on bond: his presence at the location, his access to the room with the contraband, his offering to sell drugs to Kissler, his selling drugs to an individual that was witnessed by Sergeant Soria, and his large sums of money hidden in his vehicle. *See Macedo*, 629 S.W.3d at 240. Thus, the knowledge that Williams was on bond did not have any substantial or injurious effect on the jury's verdict. *See id.*; *Barshaw*, 342 S.W.3d at 93–94.

Because the issue was unpreserved and because the evidence would have been admissible under Rule 404(b)(2) and was not substantially injurious or influential on the verdict, we overrule Williams's second issue.

C. Rule 403

Williams makes two complaints about the admission of evidence in violation of Rule 403. Issue one concerns the testimony that he was on bond for another offense at the time of his arrest in this case. Issue three concerns the admission of State's exhibits

18

71 and 72—CSCD paperwork found in Williams's vehicle that documented his release on pretrial supervision and the requisite electronic GPS monitoring.

1. Applicable Law

Under Rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Unfair prejudice refers to the evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022) (internal quotation marks omitted).

Following a Rule 403 objection, the trial court has a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 389). When the trial court overrules a Rule 403 objection, we presume the trial court applied a Rule 403 balancing test and determined the evidence was admissible. *Id.*

The balancing test for a Rule 403 objection in the context of extraneous conduct evidence[17] includes four factors: (1) how compelling the extraneous offense evidence is

---

[17]The pretrial discussion and objections included the State's acknowledgement of the applicability of Rule 404(b) to the evidence that Williams was on bond as potential evidence of extraneous acts or offenses.

in making a fact of consequence more or less probable; (2) the potential the extraneous offense evidence has to impress the jury in an irrational, yet indelible, way; (3) the time needed to develop the evidence, distracting the jury from the consideration of the indicted offense; and (4) the force of the proponent's need for the evidence to prove a fact of consequence. *Irsan v. State*, 708 S.W.3d 584, 617 (Tex. Crim. App. 2025) (citing *De La Paz v. State*, 279 S.W.3d 336, 348–49 (Tex. Crim. App. 2009)), *petition for cert. filed*, ____ (U.S. Sept. 17, 2025) (No. 25-5665).

2. Analysis

Prior to the start of trial, Williams's counsel objected to the State's request to discuss that Williams was on bond when he was arrested in the instant case. *See* Tex. R. Evid. 103(a)(1) (a party preserves a claim of error if the party, on the record, timely objects to the admission of the evidence). Williams's counsel argued that any mention of Williams being on bond for a prior arrest—not the fact that he was wearing a GPS monitor—was more prejudicial than probative. The State responded that it needed to call a pretrial services officer as a witness in order to get into the GPS evidence in the case and that it would be inevitable that the jury would discover Williams was being supervised based on her job description.

We agree with the trial court that the testimony that he was on bond was a necessary byproduct of the proper introduction of the GPS monitoring logs that showed he was frequently at the Relax Inn despite his not living or working there, and Officer Phillips was the only qualified witness to verify these records. *See Montoya v.*

20

*State*, 832 S.W.2d 138, 141 (Tex. App.—Fort Worth 1992, no pet.) (holding the Texas Rules of Evidence provide that records can be shown by the custodian or another qualified witness). Further, all four *Irsan* factors weigh in favor of the admission of the evidence as more probative than prejudicial.

First, the State aimed to establish that Williams's presence at the Relax Inn was due to his involvement with the distribution—and possession—of the controlled substances seized. The testimony that Williams was on pretrial supervision was only used to lay a predicate for the admission of the GPS logs, showing that he spent time at the Relax Inn, making it more probable that he was part of the drug operation. *See Irsan*, 708 S.W.3d at 617. Second, the record does not support—and Williams's appellate brief does not point to any evidence—that the testimony influenced the jury in any manner, irrational or otherwise. *See id.* Third, the State did not spend an inordinate amount of time on Williams's pretrial supervision terms. *See id.* The testimony from Officer Phillips that Williams was on bond amounted to less than five pages of the 196-page reporter's record of the guilt–innocence phase of trial.[18] *See id.*

Thus, nothing in the record indicates that a decision was made on an improper basis or that the testimony that Williams was on bond distracted the jury from the main issues. *See id.* As a result, the trial court's decision to allow this testimony was not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.3d at 391.

---

[18]Further, the State did not have another witness to properly present the GPS logs for admission and to showcase the frequency of Williams's visits to the Relax Inn.

We overrule Williams's first issue.

In his third issue, Williams complains that the admission of State's exhibits 71 and 72 was more prejudicial than probative. These exhibits are photographs of CSCD paperwork bearing Williams's name that provides (71) information about his next appointment with Officer Phillips and (72) details related to his assigned GPS monitoring device.[19] Williams objected to the admission of both exhibits when they were offered during his trial. *See* Tex. R. Evid. 103(a)(1). The trial court overruled the objection, and the exhibits were published to the jury. The entire testimony about these two exhibits was as follows:

> Q. What are we looking at in State's Exhibit No. 71?
>
> A. This is community supervision paperwork that we located inside the glove box as well, with Brandon Williams's name.
>
> Q. And that was with the cash?
>
> A. Yes, sir.

---

[19]Although Williams contends on appeal that the evidence was not relevant, he did not make this argument to the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). Additionally, Williams did not brief the issue of relevance. As a result, we decline to address this complaint. *See* Tex. R. App. P. 38.1(i).

Also in issue three, Williams alleges that the harm could not have been cured by the erroneous limiting instruction given. But Williams does not point to which part of the instruction was erroneous, nor does he provide any legal support for this assertion. We also note that he did not request any limiting instruction related to these exhibits during trial. *See* Tex. R. App. P. 33.1. We therefore likewise decline to address this complaint on appeal. *See id.*; Tex. R. App. P. 38.1(i).

Q. What are we looking at in State's Exhibit No. 72?

A. Just more paperwork which has Mr. Williams's name.

Considering the same *Irsan* factors in the context of an extraneous conduct Rule 403 objection, the complained-of exhibits make it more probable that the stacks of cash—folded into Williams's paperwork—also belonged to him,[20] thereby providing circumstantial evidence linking him to the possession of the controlled substances with intent to deliver, as alleged in the indictment.[21] *See Irsan*, 708 S.W.3d at 617.

Additionally, the CSCD paperwork reflecting Williams's upcoming appointment with Officer Phillips and the page explaining the GPS electronic monitoring program have no more risk of irrational impression on the jury than testimony of the same from Officer Phillips. *See id.* The paperwork merely lists the offense as "unknown," again posing little risk of any irrational, indelible influence upon the jury's determinations. The State likewise took very little time to develop this testimony—doing nothing more than identifying the exhibits. Finally, these papers—found in the console of Williams's vehicle and bearing his name—substantially supported the State's claim that the vehicle, the stacks of cash within, and the key card for the room containing the controlled substances were all his. *See id.*

---

[20]State's exhibit 68 depicts a stack of cash folded into—what appears to be—the same GPS monitoring instructions found in exhibit 72, located in the console of Williams's vehicle. This exhibit was admitted without objection.

[21]When asked if "drug dealers usually keep money and drugs together," Sergeant Soria testified that "they do their best to keep everything separate."

Like the complained-of testimony from Officer Phillips, nothing in the record suggests that the admission of these exhibits was outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.3d at 391. Further, the record supports that neither the testimony nor the exhibits were more prejudicial than probative. *See* Tex. R. Evid. 403.

We overrule Williams's third issue.

D. Rule 704

In Williams's fourth issue, he claims the trial court abused its discretion in admitting Sergeant Soria's testimony that Williams could still possess the drugs seized in this case if he was not in the room at the time of the seizure. Williams objected to the testimony on the ground that it called for an impermissible legal conclusion—and he argues the same on appeal.[22]

1. Applicable Law

The opinion of a nonexpert witness is not admissible unless the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Tex. R. Evid. 701. And generally speaking, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Tex. R. Evid. 704. However, an opinion *is* inadmissible if

---

[22]Williams specifically avers that his objection to this testimony was not made under Rule 704. Rule 704 is instructive, however, in our analysis of Sergeant Soria's testimony.

it is a legal conclusion or amounts to little more than choosing sides as to how the case should be ultimately decided. *Gross v. State*, 730 S.W.2d 104, 106 (Tex. App.—Texarkana 1987, no pet.). The expression of guilt or innocence in any case is a conclusion to be reached by the jury based upon the instruction given to them in the trial court's charge coupled with the evidence admitted by the judge throughout the course of the trial. *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974). No witness is competent to voice an opinion as to guilt or innocence. *Id.*

When a witness who is capable of being qualified as an expert testifies regarding events that he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony. *Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002). Police officers, although possessing both training and experience, are not precluded from offering lay testimony based on their personal observations. *Id.*; *Solomon*, 49 S.W.3d at 364 (holding lay testimony is permitted when the witness has personal knowledge of the events). An officer may also testify regarding his inspection of the evidence. *Mohler v. State*, No. 02-15-00024-CR, 2016 WL 5442066, at *6 (Tex. App.—Fort Worth Sept. 29, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Nailor*, 149 S.W.3d 125, 134–35 (Tex. Crim. App. 2004) (holding counsel not ineffective for not objecting to officer's opinion testimony that defendant had not been attacked); *Solomon*, 49 S.W.3d at 364 (holding admissible witness's testimony that defendant was responsible for robbery); and *Williams v. State*, 417 S.W.3d 162, 182 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding

25

admissible officer's testimony that the crime scene suggested "something sexual" and that it did not appear to be a "normal sexual assault")).

2. Analysis

Here, the prosecutor first asked Sergeant Soria whether Williams "could . . . still have possession and control of [the] drugs" if he was not in the room where the drugs were seized. Defense counsel objected to speculation and to improper legal conclusion. *See* Tex. R. Evid. 103(a)(1). Both were overruled and Sergeant Soria answered, "Absolutely." A bench conference and hearing outside the presence of the jury then occurred, and when the jury returned, the prosecutor asked Sergeant Soria to repeat his response. Sergeant Soria stated: "Again, based off my previous knowledge of [Williams] at the location, [his] being observed having interactions at room 142, [his] having the keycard for room 142 in his pocket, and . . . Jessica Campbell['s] . . . identifi[cation] [of Williams] as the owner of the drugs."

First, the question asked Sergeant Soria if Williams *could* have possession and control if he was not physically in the room when the drugs were seized, not if he *did* have possession and control at that time. Second, the extended response from Sergeant Soria explained what evidence could support the element of possession.

It is permissible for an officer to explain the evidence. *See Mohler*, 2016 WL 5442066, at *6. Sergeant Soria's testimony was admissible as lay testimony because it was rationally based upon his perception, assisted by his experience and training, and was helpful to a determination of the facts at issue—if possession of drugs is possible

when a defendant is not holding the drugs in his hands at the time of his arrest and what evidence might be helpful in making that determination. *See Ortiz v. State*, No. 2-03-259-CR, 2005 WL 1994174, at \*6 (Tex. App.—Fort Worth Aug. 18, 2005, pet. ref'd) (mem. op., not designated for publication) (holding officer's testimony was admissible as lay testimony because it was helpful to a determination of a fact in question, i.e., the defendant's intent); *see also Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that officer could testify based upon his training and experience that the defendant's actions were consistent with those of someone selling drugs); *Williams v. State*, 826 S.W.2d 783, 785 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (holding that officer could give opinion as lay witness and expert witness that he interpreted defendant's actions to be a drug transaction).

Moreover, in light of the evidence that Williams tried to sell Kissler drugs, sold fentanyl during a "hand-to-hand" transaction, possessed two key cards to the room where the drugs and related contraband were found, paid for the room where the drugs were found, used Campbell to help bag and sell the drugs, and had stacks of cash in his vehicle, error, if any, was harmless here. *See* Tex. R. App. P. 44.2(b); *see also Solomon*, 49 S.W.3d at 365 (holding substantial rights are not affected by the erroneous admission of evidence if there is fair assurance the error did not influence the jury or had but a slight effect).

We overrule Williams's fourth issue.

E. Hearsay

In his fifth issue, Williams complains that Sergeant Soria should not have been permitted to testify to information gained during the investigation that Williams was a narcotics distributor at the Relax Inn and that the drugs had been moved to room 142 because the testimony amounted to "back door hearsay."

1. Applicable Law

Under the Texas Rules of Evidence, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d); *see Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999) ("[A] statement which is not offered to prove the truth of the matter asserted, but is offered for some other reason, is not hearsay."); *Hernandez v. State*, 585 S.W.3d 537, 554 (Tex. App.—San Antonio 2019, pet. ref'd) (holding generally evidence that can assist the jury by providing context for a police officer's actions during an investigation is not considered hearsay); *Sosa v. State*, No. 05-11-01294-CR, 2012 WL 5936295, at *3 (Tex. App.—Dallas Nov. 28, 2012, no pet.) (mem. op., not designated for publication) ("[I]f a statement is offered to show the effect on the listener, rather than for the truth of the matter asserted, then the statement is not hearsay." (first citing *Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd); and then citing *In re Bexar Cnty. Crim. Dist. Att'y's Off.*, 224 S.W.3d 182, 189 (Tex. 2007) (orig. proceeding))).

Within the context of the rule, a "statement" is "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal

28

expression." Tex. R. Evid. 801(a). A "matter asserted" is any matter that (1) is explicitly asserted and (2) is implied by a statement "if the probative value of the statement as offered flows from the declarant's belief about the matter." Tex. R. Evid. 801(c).

2. Analysis

Here, both the challenged statements were offered to give context to Sergeant Soria's investigation to prepare a narcotics search warrant and are not hearsay. *See Hernandez*, 585 S.W.3d at 554.

Sergeant Soria testified that he received information from someone "frequent in the . . . hotel scene in west Fort Worth" who identified Williams as a narcotics distributor at the hotel and that he received a tip that the drugs had been moved to room 142. This testimony was not offered to prove that Williams possessed the drugs that may have been in room 142 of the Relax Inn, or even that he intended to sell these drugs, but to establish what statements Sergeant Soria relied on in preparing the search warrant. *See Davis v. State*, 169 S.W.3d 673, 676 (Tex. App.—Fort Worth 2005, no pet.) (mem. op.) ("[A] police officer may testify about anonymous tips received for the purpose of showing why the investigation focused on a particular defendant." (citing *Cano v. State*, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi–Edinburg 1999, pet. ref'd); and *Levario v. State*, 964 S.W.2d 290, 296 (Tex. App.—El Paso 1997, no pet.)). This testimony does little more than showcase the development of Sergeant Soria's investigation in preparing the search warrants and was therefore not hearsay.

But even if we presume the statements were offered for the truth of the matter and are "back door hearsay," we hold any error harmless under Rule 44.2(b). *See* Tex. R. App. P. 44.2(b). The evidence that Williams frequently visited the Relax Inn, that he had two key cards to room 142 where the drugs were discovered, that he had several stacks of cash, that he had attempted to sell Kissler drugs, and that Sergeant Soria saw Williams sell fentanyl in a "hand-to-hand" transaction all suggest that any error had no influence, or at most a slight effect, on the verdict and was harmless. *See Nguyen v. State*, 693 S.W.3d 732, 740 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

We overrule Williams's fifth issue.

### IV. Cumulative Error Challenge

In his sixth issue, Williams claims that he was denied a fair trial because of the cumulative effect of the alleged evidentiary errors in issues one through five.[23]

A. Applicable Law

The doctrine of cumulative error provides that the cumulative effect of multiple errors can, in the aggregate, constitute reversible error, even though no single instance of error would. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *Priddy v. State*, No. 02-13-00586-CR, 2014 WL 5307180, at *1 (Tex. App.—Fort Worth Oct.

---

[23]Williams's brief takes the position "that the errors set out in issues one through six are in isolation sufficient to require reversal of the convictions." As the cumulative error issue is raised in issue six, we read this to mean that the cumulative error argument refers only to the first five issues raised.

16, 2014, no pet.) (mem. op., not designated for publication). However, for the doctrine to apply, the alleged errors complained of must actually constitute error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *Priddy*, 2014 WL 5307180, at *1. "The doctrine of cumulative error . . . rarely results in reversal, and is predicated upon meeting the standard of reversible error." *Vasquez v. State*, No. 2-04-214-CR, 2006 WL 133462, at *5 (Tex. App.—Fort Worth Jan. 19, 2006, no pet.) (mem. op., not designated for publication).

B. Analysis

Here, as we have explained, the trial court did not abuse its discretion by admitting the complained-of evidence during the guilt–innocence phase of Williams's trial. We have likewise determined that, even if the trial court did abuse its discretion by admitting any of the challenged evidence, Williams was not harmed by such admission. Thus, as set out above, there are no errors in this case to cumulate. *See Jenkins v. State*, 493 S.W.3d 583, 613 (Tex. Crim. App. 2016) (overruling appellant's cumulative-error complaint when he failed to show that the trial court erred "with respect to any point of error"); *Bell v. State*, No. 02-18-00244-CR, 2019 WL 1967538, at *9 (Tex. App.—Fort Worth May 2, 2019, pet. ref'd) (mem. op., not designated for publication) ("Bell argues that even if each of his previous points do not constitute harm sufficient for reversal, their cumulative effect does, undermining the fundamental fairness of the proceedings. But his individual points either do not demonstrate reversible error or do not show that he was harmed. Therefore, there is no error to cumulate."); *Baker v. State*, No. 03-18-

00240-CR, 2019 WL 1646260, at *7 (Tex. App.—Austin Apr. 17, 2019, no pet.) (mem. op., not designated for publication) ("Here, Baker's cumulative-error contention lacks merit because we have concluded, as to his preserved appellate issues, that one complained-of error was harmless and that there was no error as to the remaining complaints.").

We overrule Williams's sixth issue.

## V. Conclusion

Having overruled all seven of Williams's issues, we affirm the trial court's judgments.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 23, 2025